IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**LEIGH ANN WILLIAMS**,

        Plaintiff,

vs.

**MICHAEL J. ASTRUE,**
Commissioner of Social Security,

        Defendant.

Civil Case No. 08-6336-KI

OPINION AND ORDER

    Kathryn Tassinari
    Brent Wells
    Harder, Wells, Baron & Manning, P.C.
    474 Willamette, Suite 200
    Eugene, Oregon  97401

        Attorneys for Plaintiff

    Dwight C. Holton
    Acting United States Attorney
    District of Oregon

Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204-2902

Franco L. Becia
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Leigh Ann Williams brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). I reverse the decision of the Commissioner.

## BACKGROUND

Plaintiff filed an application for SSI and DIB on November 20, 2005, alleging disability beginning June 30, 2004. The applications were denied initially and upon reconsideration. After a timely request for a hearing, plaintiff appeared and testified before an Administrative Law Judge ("ALJ") on December 13, 2007. Plaintiff was not represented by an attorney at the hearing.

On January 25, 2008, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the

final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on August 28, 2008.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds

Page 3 - OPINION AND ORDER

to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

**STANDARD OF REVIEW**

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

**THE ALJ'S DECISION**

The ALJ concluded plaintiff suffered from obesity, degenerative disc disease of the lumbar spine and bilateral trochanteric bursitis.  However, the ALJ did not find that these impairments met or medically equaled the requirements of any of the impairments listed in Appendix 1, Subpart P of part 404 of the Social Security Regulations.  The ALJ found plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could stand and walk six hours in an eight-hour workday, and could sit six hours in an eight-hour workday so long as she had a sit/stand option.  The ALJ concluded plaintiff could occasionally bend, stoop, crouch, crawl and kneel, could occasionally climb ramps and stairs, ladders, ropes and scaffolds, but was limited to tasks that required no more than one to three steps due to distractions from pain.

**FACTS**

Plaintiff, born in 1972, alleges disability beginning June 30, 2004, due to degenerative disc disease.  Plaintiff graduated from high school.  She has worked as a cashier, a plywood salesperson, a paint salesperson, and a department manager.

Page 5 - OPINION AND ORDER

Plaintiff appeared in the emergency room on May 2, 2005 complaining of back pain. She reported that she had been suffering with the pain for the past week. She told the doctor that "she had a history of degenerative disk disease, so she has had low back pain before; however, it has never lasted this long. Normally she will have the pain for only 2 to 3 days." Tr. 160. A lumbar spine x-ray showed "[t]ransitional S1 vertebra," "minimal spondylosis," "[m]ild degenerative disk disease at L4-5 and L5-S1," and "[r]etrolisthesis of L5 on S1, approximately 3-4 mm." Tr. 162.

Plaintiff began seeing Ahmed Taher, M.D., in May 2005, and she reported to him that she had experienced low back pain for the past ten years. Dr. Taher noted, "She thinks pushing a car about ten years ago might have started this but recently it has been severe." Tr. 285. She also told him she did not like the pain medication she received from the ER.

Miroslav P. Bobek, M.D., examined plaintiff on June 1, 2005. She told him she thought she first injured her back when "she was doing a lot of lifting around the house as well as pushing a car." Tr. 176. She reported having pain off and on over the years. Dr. Bobek diagnosed degenerative disc disease at L4-5 and L5-S1. Plaintiff experienced itchiness when she took Codeine, Vicodin, Darvocet and Tylenol #3 with Codeine. Dr. Bobek's examination revealed plaintiff had the full range of motion in her lumbar spine, although extension and lateral bending were painful. She could walk on heels and toes, do single foot heel raisers and deep knee bends, and had 5/5 strength in her lower extremity muscles. She was able to tandem walk. Dr. Bobek did not recommend surgery, but recommended weight loss and injections.

Plaintiff received epidural steroid injections in July and September 2005.

> In November 2005, Dr. Taher noted:
>
>> Doesn't feel like she can do anything. Per the welfare people, they need a letter from here to avoid work or school. . . . Discussed we don't do disability evaluations. . . . Discussed work restrictions and will allow her to work light duty. She states she can't sit or stand for more than 5-10 minutes at a time and will put those restrictions on there and see how she does with that. . . . Discussed pain meds to help with the pain, she is currently not interested in that.

Tr. 276.

In December 2005, Dr. Taher "gave her work restrictions which apparently they just told her she didn't need to work because of the back discomfort." Tr. 274. A week later, she told Dr. Taher that she hurt her back when she was 16 "when she was moving some things out of her horses way." Tr. 273. Dr. Taher continued her work restrictions. A week later, Dr. Taher reported that plaintiff "doesn't feel she can work. Given off work. Hopefully will have her seen by Occupational Health for further evaluation." Tr. 272.

In January 2006, plaintiff told Dr. Taher she was willing to try long-acting Morphine for her back pain. She experienced an itching sensation while she was taking Percocet, so Dr. Taher suggested she take Benadryl if she felt itchy on the Morphine. He also indicated he would check into why she had not been seen by Occupational Health and opined, "I think at this point, however, clearly she is unable to work." Tr. 271.

Dr. Taher treated plaintiff on several more occasions in January and February 2006; plaintiff got no relief from the pain medications or a third steroid injection.

In April 2006, Dr. Taher saw plaintiff who still had "significant back pain," and who "[g]ave her a note to take to the Welfare Office. I doubt she can work although I told her we don't do disability evaluation[s]." Tr. 261.

Page 7 - OPINION AND ORDER

Dr. Taher noted that plaintiff was "using care in moving" during her appointment with him in May of 2006. Tr. 259.

Plaintiff was referred to a pain management clinic. George D. Johnston, D.O., evaluated plaintiff on July 10, 2006 and made the following findings:

> Palpation: Focal tenderness over the lumbosacral paraspinal muscles, SI joints, midline lumbosacral junction. Straight leg raising test: Negative bilaterally for radicular pain. Motor system: Strength 5/5 bilateral, lower extremities. Provocative Maneuvers Lumbar facet loading produced bilateral lumbosacral spine pain, Patrick's test produced bilateral SI joint pain. Stinchfield's test negative bilaterally. Sensory exam: There are no sensory deficits in the bilateral lower extremities. Reflexes: Reflexes physiologic and symetrical [sic] in the upper and lower extremities, Toes downgoing bilaterally. Gait: Normal cadence and stride, Gait non-antalgic, Toe and heel walk normal. Extremities: Gross joint ROM of the bilateral upper and lower extremities full and pain free without gross instability or laxity, No gross appendicular deformities.

Tr. 236. Dr. Johnston gave her a TENS unit, which was not helpful. She received bilateral SI joint and trochanteric bursa injections on August 18, 2006, which relieved some of her pain. She received another injection on August 29, 2006. On September 5, 2006, plaintiff told Dr. Taher that she needed to take it easy, but she was better. During this time, both Dr. Johnston and Dr. Taher recommended an exercise program and weight loss. Later that month, Dr. Taher gave her another month off work due to plaintiff's back pain.

On October 30, 2006, plaintiff reported to Dr. Taher that her back felt better, although she still had some back pain. After being hospitalized for a bladder infection on January 16, 2007, plaintiff reported to Dr. Taher that she still had significant back pain and he recommended a trial of Tramadol.

## DISCUSSION

I.   Plaintiff's Credibility

Plaintiff challenges the ALJ's conclusion that she was not fully credible. The ALJ based her credibility analysis on the following evidence: The ALJ commented that none of plaintiff's physicians indicated plaintiff was functionally limited by her back pain. Both Dr. Bobek's and Dr. Johnston's examinations revealed plaintiff's full range of motion, ability to tandem, heel and toe walk, full motor strength, ability to do single foot heel raises and deep knee bends, and no gait abnormalities. Similarly, Dr. Taher's notes did not indicate any functional limitations. Furthermore, plaintiff refused pain medication, and Dr. Taher released plaintiff for light work in November 2005 based on plaintiff's reports, not on an evaluation of her abilities. Plaintiff never pursued Dr. Taher's Occupational Health referral and, although she had been advised to exercise, she engaged in no aerobic activity.

The ALJ also pointed out a number of inconsistencies in the evidence. First, the ALJ considered the fact that plaintiff alleged an onset date of disability of June 30, 2004, but the medical records showed that she reported previous back pain of only two to three days when she appeared at the emergency room in May 2005. Plaintiff's story about how she injured her back also varied–moving objects out of the way of her horse versus moving a car. A friend reported plaintiff could walk only about 50 feet, but plaintiff reported she could walk for up to one mile, which is more than the 5 to 10 minutes she told Dr. Taher she could stand. Plaintiff also reported she liked to fish and camp when she had the supplies. She testified that on bad days she had to hold on to her boyfriend or her children for support while she walked, but there was no medical evidence to support that level of limitation. Additionally, plaintiff has a very limited work

Page 9 - OPINION AND ORDER

history. She reportedly stopped working in 2004 when she felt a pulling in her back while lifting items, but she never filed a worker's compensation claim. She lived with her boyfriend, who supports her, and the ALJ felt plaintiff

> has no incentive to return to the workforce as her financial needs are being met in a household where she is exempted from even minimal housekeeping functions. There are no objective clinical findings that would prevent Ms. Williams from performing light exertion activity on a regular basis or from engaging in the kind of regular exercise that her physicians suggest would improve her comfort level. Assuming she is being truthful about her activity level, it appears to be a matter of choice rather than medical necessity that keeps [her] from being more active.

Tr. 13.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." Id.

The ALJ gave specific, clear and convincing reasons for finding plaintiff's testimony not fully credible. The lack of functional limitations, when Dr. Bobek and Dr. Johnston specifically examined plaintiff to determine the severity of her back injury, is a clear and convincing reason for finding plaintiff's testimony about her limitations not fully credible. See Rollins v.

Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (medical evidence is a relevant factor in determining the severity of the pain and its disabling effects).  Additionally, plaintiff was told on a number of occasions to get more exercise and was referred for an Occupational Health evaluation.  An unexplained failure to follow a doctor's advice is a credibility factor.  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  I am not convinced, however, that plaintiff's refusal of pain medication is a clear and convincing reason as she had a reported allergy to past medications and indicated a willingness to try morphine at a later point.  Nevertheless, the fact that the ALJ improperly considered some reasons for finding plaintiff's credibility undermined does not mean that the ALJ's entire credibility assessment is improper.  Batson v. Commissioner of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2003).

      The ALJ legitimately questioned plaintiff's reports both about the onset date of her disability and the original cause of the back pain.  In testifying about the onset date of her disability, plaintiff stated that after she recovered from her back injury in 2004, when she pulled something in her back at work, she had no excuse for not finding lighter employment.  Plaintiff's indication that she injured her back while moving a car versus moving things out of the way of her horse would not alone be a clear and convincing reason to find her testimony not credible, but it is a relevant inconsistency for the ALJ to consider as one of many.  Furthermore, plaintiff's written report that she could walk "less than 1 mile" before needing to stop and rest, as the ALJ noted, is so far removed from a report that she could only walk "50 feet" that I find it is a clear and convincing reason to reject plaintiff's testimony, despite the fact that 50 feet is less than 1 mile.  Similarly, plaintiff's report that she could walk less than one mile is inconsistent with her report that she could stand for only five or ten minutes.  The ALJ's interpretation of the evidence

Page 11 - OPINION AND ORDER

was rational.  See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) ("the court may not engage in second-guessing").

Finally, the ALJ's inferences about plaintiff's motivation to work, based on her work history and her testimony, was supported by substantial evidence in the record and was a rational interpretation of the evidence.  See id. (ALJ entitled to draw inferences about the influence plaintiff's assets had on his motivation to work); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (spotty work history a valid reason to reject testimony).

In sum, the ALJ's reasons for discounting plaintiff's testimony are supported by substantial evidence in the record.

II.     Medical Evidence

Plaintiff contends the ALJ failed to discuss all of the statements of plaintiff's treating doctor, Ahmed Taher, M.D.  The ALJ noted plaintiff's statements to Dr. Taher that "she felt incapable of doing anything, which happened to coincide with her reports of applying for disability benefits." Tr. 12.  The ALJ noted Dr. Taher's statement in November 2005 that plaintiff and he "discussed work restrictions and will allow her to work light duty.  She states she can't sit or stand for more than 5-10 minutes at a time and will put those restrictions on there and see how she does with that." Tr. 12, 278.  The ALJ dismissed this evidence as being based on plaintiff's own reports, and the fact that Dr. Taher had referred plaintiff to Occupational Health for a work capacity evaluation which plaintiff never completed.  The ALJ also noted that Dr. Taher's records did not indicate plaintiff suffered from any functional limitations, such as her strength, motor function, sensory deficits or range of motion.

Plaintiff complains that Dr. Taher made a number of other statements indicating he thought plaintiff was unable to work, which the ALJ failed to address. Dr. Taher wrote in January 2006, "Has been referred to Occupational Health for work limit evaluation. Discussed this with her and she is not able to be seen yet. Will check into why. I think at this point, however, clearly she is unable to work." Tr. 271. Later, in April 2006, he wrote, "I doubt she can work although I told her we don't do disability evaluation." Tr. 261.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

I agree with plaintiff that the ALJ failed to adequately address Dr. Taher's comments. In fact, the ALJ inaccurately stated, "State agency medical advisors assessed Ms. Williams as capable of performing at the light exertion level and no treating source has offered a contrary

Page 13 - OPINION AND ORDER

opinion." Tr. 13. It is clear that Dr. Taher at several points in his treatment of plaintiff concluded that plaintiff was not able to work at all.

However, I disagree that this is the rare case where it is appropriate to remand for a finding of disability. Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) ("unusual case" where "remand for an immediate award of benefits is appropriate"). Instead, a remand for further findings is called for when a doctor's opinion is not properly disregarded but the record might contain sufficient reasons to reject it. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). For example, here the ALJ may conclude that Dr. Taher's comments were "premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations [and such opinions] may be disregarded where those complaints have been properly discounted." Morgan, 169 F.3d at 602 (internal quotation omitted). Furthermore, an ALJ is not required to accept the opinion of a physician, even a treating physician, if the opinion is "brief, conclusory, and inadequately supported by clinical findings." Batson, 359 F.3d at 1195. I note, for example, that Dr. Taher did not appear to support his conclusions with any evaluations of plaintiff's functional limitations. Nevertheless, the ALJ is in the best position to more fully evaluate Dr. Taher's opinions.

III.     Failure to Develop the Record

A Social Security ALJ has an "independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal quotation omitted). The duty is heightened if a claimant is unrepresented or is mentally ill and cannot protect his own interests.

The ALJ must supplement the record if: (1) there is ambiguous evidence; (2) the ALJ finds that the record is inadequate; or (3) the ALJ relies on an expert's conclusion that the evidence is ambiguous.  Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005).  The supplementation can include subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow the record to be supplemented.  Tonapetyan, 242 F.3d at 1150.

Although the record reflects that the ALJ was careful to advise plaintiff she could obtain counsel, Tr. 8, plaintiff was unrepresented at the hearing.  Given Dr. Taher's statements about plaintiff's inability to work, and given the fact that I am remanding for further proceedings, it might be prudent for the ALJ to consider requesting a medical source statement about what plaintiff can do despite her degenerative disc disease.  See 20 C.F.R. § 404.1513(b)(6) (the agency "will request a medical source statement about what you can still do despite your impairment(s) . . . .").

## CONCLUSION

The decision of the Commissioner is reversed.  This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above.  Judgment will be entered.

IT IS SO ORDERED.

Dated this      9th      day of February, 2010.

    /s/ Garr M. King
Garr M. King
United States District Judge

Page 15 - OPINION AND ORDER